UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:05-CV-31-F

| | | |
|---|---|---|
| PHILLIP JAMES McCORMICK, )<br>Plaintiff, )<br>)<br>vs. )<br>)<br>INTERKORDSA GmbH, German, )<br>Corporation, DUPONT-SABANCI )<br>INTERNATIONAL, L.L.C., ; and )<br>KORDSA INCORPORATED )<br>Defendants, )<br>)<br>vs. )<br>)<br>ZENITH INSURANCE COMPANY,)<br>Respondent. ) | | ORDER |

This matter is before the court on Defendant Dupont-Sabanci International, L.L.C.'s Motion for Summary Judgment [DE-49], Motion to Strike [DE-85], Motion to Strike [DE-96], Motion for In Camera Inspection [DE-98], and Motion for Judgment on the Pleadings, or in the Alternative, Second Motion for Summary Judgment [DE-108]. All the motions have been fully briefed.

## I. PROCEDURAL AND FACTUAL HISTORY

### A. Initiation of Action and Original Complaint

Plaintiff Phillip James McCormick ("McCormick") initiated this action on January 13, 2005, by filing a Complaint in the North Carolina General Court of Justice, Superior Court Division for Columbus County, asserting claims against Defendants Interkordsa GmbH

("GmbH"), Haci Ömer Sabanci Holding, A.S., Sabanci Holding, Sabanci Group, and Dupont - Sabanci International, L.L.C. ("DUSA"). On February 25, 2005, DUSA filed a Notice of Removal in this court. Notice of Removal [DE-1].

In the original Complaint, McCormick alleged that on July 3, 2003, he was working at a manufacturing plant in Whiteville, North Carolina, that was owned by his employer, Interkordsa, Inc. ("Interkordsa"). Notice of Removal [DE-1], Compl. ¶ 12. While working, McCormick saw that one of his co-workers had become entangled in a tire cord machine. *Id.* ¶ 15. When McCormick attempted to rescue his co-worker he himself became entangled in the tire cord machine and incurred massive bodily injuries, including extensive internal injuries. *Id.* ¶¶ 17-18.

McCormick also alleged that all the named Defendants, collectively referred to as "Defendants Sabanci" built the Interkordsa manufacturing facility in 2001. *Id.* ¶ 9. McCormick alleged that Defendants Sabanci "[a]s part of the building process . . . designed, constructed ,and manufactured various tire cord manufacturing machines." *Id.* ¶ 10. Moreover, McCormick alleged that "[i]n 2001, Defendants Sabanci sold, marketed, and provided to Interkordsa various tire cord manufacturers." *Id.* ¶ 11.

McCormick asserted a claim for negligence and a claim for breach of express and implied warranties against "Defendants Sabanci." With regard to the claim of negligence, McCormick alleged, *inter alia*, that:

> 9) The Defendants Sabanci built a manufacturing facility in Whiteville, North Carolina in approximately 2001.
> 10) As part of the building process, the Defendants Sabanci designed, constructed, and manufactured various tire cord machines.
> 11) In 2001, the Defendants Sabanci sold, marketed and provided to Interkordsa, Inc., various tire cord machines. . . .
> . . .

> 22) The Defendants Sabanci were negligent in that they . . . .
>    a) Negligently and wantonly designed, marketed, and manufactured the subject tire cord machine;
>    b) Negligently and wantonly designed, marketed, and manufactured the subject tire cored machine without appropriate and necessary safety interlocks and guarding;
>    c) Negligently and wantonly designed, marketed, and manufactured the subject tire cored machine without proper testing; [and]
>    d) Negligently and wantonly designed, marketed, and manufactured the subject tire cored machine in a manner that violated OSHA rules and regulations for guarding of machines;

Notice of Removal [DE-1], Compl. ¶¶ 9-11, 22. With regard to the breach of warranties claim, McCormick alleged, *inter alia*, that "Defendants Sabanci, in order to induce the purchase of its tire cord machines which it designed, marketed, and sold, advertised and represented to members of the public that the subject machines were safe for the purposes for which the subject machines were designed and intended." *Id.* ¶ 28.

## B. Preliminary Motions and Motion to Participate

On May 18, 2005, the undersigned signed a Consent Order dismissing Haci Ömer Sabanci Holding, A.S., from this action. May 18, 2005 Order [DE-15]. On December 30, 2005, Zenith Insurance Company ("Zenith") filed a motion captioned "Response to Motion for Leave to Amend Answer and Request to Participate in the Proceeding, or in the alternative, Motion to Intervene and Motion to Exclude and Designate the Potential Issue of Concurrent Negligence for Separate Hearing". Mot. for Miscellaneous Relief [DE-24]. Prior to ruling on Zenith's various requests, the undersigned signed an Order, with the consent of all the interested parties, staying the action so the parties could participate in a mediated settlement conference. January 26, 2006, Order [DE-27]. On June 13, 2006, the stay was lifted pursuant to the court's order. June 13, 2006 Order [DE-33].

In an Order filed on August 15, 2006, the court allowed Zenith's request to participate in the proceedings, but directed the other parties to respond to Zenith's Motion to Exclude and Designate the Potential Issue of Concurrent Negligence for separate hearing. The court also directed McCormick to show cause why his claims against certain defendants should not be dismissed for failure to proceed as noticed by the Clerk of Court. August 15, 2006 Order [DE-38]. After McCormick filed a response indicating that dismissal would be appropriate, the court, in Orders filed on August 17, 2006, and December 15, 2006, dismissed McCormick's claims against Sabanci Holding and Sabanci Group. August 17, 2006 Order [DE-41] and December 15, 2006 Order [DE-67]. After receiving the other parties' responses to Zenith's Motion to Exclude, the court denied Zenith's request to present the issue of concurrent negligence in a separate hearing for the jury. October 16, 2006 Order [DE-48].

### C. Motion for Summary Judgment and Amended Complaint

Thereafter, on November 2, 2006, DUSA filed a Motion for Summary Judgment, arguing that evidence shows that DUSA took no part in the design, manufacture, construction, assembly, marketing, sale, or ownership of the tire cord machine at the center of the lawsuit. Mot. for Summ. J. [DE-49]. Specifically, DUSA argued that the subject tire cord machine was assembled by a company named Nuermont Corporation for McCormick's employer, Interkordsa. DUSA contends that Interkordsa accepted Nuermont Corporation's proposal in November 2000, and Nuermont Corporation assembled the tire cord machine using component parts and design blueprints sent by GmbH from Germany. Mot. for Summ. J.[DE-49], Aff. of Sam Hixson, ¶ 11. DUSA also maintains that at the time the tire cord machine was assembled, GmbH owned all one million shares of common stock of Interkordsa. Mot. for Summ. J. [DE-49], Aff. of Jim Bailey,

¶¶ 4-5. DUSA states that it was not until July 25, 2001, after the subject tire cord machine was assembled, that GmbH sold its shares of Interkordsa to DUSA. *Id.* Consequently, DUSA argues, it cannot be held responsible for either negligent design or manufacturing or breach of warranties, because it did not design, manufacture, or sell the subject tire cord machine.

After DUSA filed its Motion for Summary Judgment, McCormick filed a Motion for Leave to Amend Complaint, which was allowed by United States Magistrate Judge William A. Webb. *See* Motion for Leave to Amend Complaint [DE-52]; December 27, 2006 Order [DE-76]. The Amended Complaint added an additional Defendant, KordSA Incorporated ("KordSA"), which McCormick alleges is the successor corporation to DUSA, and includes three claims: a negligence claim against DUSA and KordSA, a breach of express and implied warranties claim against DUSA and KordSA, and a separate negligence claim against GmbH. Amend. Compl. [DE-77]. With regard to the negligence claim against DUSA and KordSA, McCormick's Amended Complaint included some of the following allegations:

> 4. From December 9, 2000, Defendant DUSA was the parent company of Defendant GmbH, and from that time forward, Defendant DUSA and Defendant GmbH were both responsible for the construction and installation of the subject machine....
> . . .
> 15. At all times complained of, the Defendant GmbH and Defendant DUSA worked together to select the tire cord machinery, including the subject machine....
> 16. At all times complained of, the Defendant GmbH and Defendant DUSA worked together to oversee the installation of the subject tire cord machinery....
> 17. At all times complained of, the Defendant GmbH and Defendant DUSA each took upon themselves the legal duty to [McCormick] of exercising reasonable care and diligence in connection with the design, selection, installation, instructions, and safety audits for the subject tire cord machinery....

20. As part of the building process, the Defendant DUSA and the Defendant GmbH participated in the design, construction, selection, and manufacture of machinery which would be used to manufacture tire cords, specifically including the [subject machine] . . . .

21. In 2000 and 2001, the Defendant DUSA and the Defendant GmbH participated in overseeing the installation of the tire cord manufacturing machines which were present at the InterkordSA plant . . . specifically including the [subject] machine . . . .

. . . .

23. From 2000 through July 3, 2003, the Defendant DUSA and the Defendant GmbH, took upon themselves the legal duty to provide proper safety instruction in the safety procedures to be used by the employees of the IntkordSA plant in Whiteville, North Carolina when operating machinery at the plant, specifically including the machine on which Plaintiff . . . was injured.

24. From 2000 through July 3, 2003, the Defendant DUSA, through and including DUSA's International Management Team, and the Defendant GmbH took upon themselves the legal duty to provide safety engineers who performed safety audits of the InterkordSA plant . . . specifically including safety audits of the machine on which [McCormick] was injured. . . .

25. From 2000 through July 3, 2002, the employees of the InterkordSA plant in Whiteville, North Carolina, including [McCormick], reasonably relied upon the safety audits of Defendant DUSA and the Defendant GmbH, specifically including the safety audits of the machine on which [McCormick], was injured.

26. From 2000 through July 3, 2003, the Defendant DUSA and the Defendant GmbH owed a legal duty to [McCormick] specifically including a legal duty related to the safety of the machine on which [McCormick] was injured, including a duty to exercise reasonable care in the selection of the machine, the design of the machine, drafting and/or providing the operating procedures for use of the machine, drafting and/or providing the manuals of operations for the machines, performing the safety audits and inspections of the subject machinery, and in the training of personnel at the InterkordSA plant in Whiteville, North Carolina in the use and operation of the subject machinery.

. . .

35. At all times complained of, the Defendant DUSA and the Defendant GmbH owed a legal duty to [McCormick] to provide proper warnings, operating procedures, and instructions on the subject machinery, specifically including proper warnings, operating procedures, and instructions for the tire manufacturing machine which is the subject of this lawsuit and by which [McCormick] was severely injured.

36. At all times complained of, the Defendant DUSA and the Defendant GmbH assumed the responsibilities and legal duties to [McCormick] including the responsibilities and duties to exercise reasonable care and diligence in the

selection, safety procedures, safety equipment, and operating procedures for use with the subject tire cord machinery.

. . . .

> 41. The Defendant DUSA, Inc. (and as a matter of law its successor corporation KordSA) were negligent in that they, through the acts and omissions of their agents, employees, and representatives:
>
>> a) Negligently and wantonly designed, selected, approved, participated in the installation of, and created operating procedures for the subject tire cord machine . . . .

Amend. Compl. [DE-77]. With regard to the Breach of Warranties claim, McCormick alleged, *inter alia*:

> 45. As the parent corporation of Defendant GmbH and exercising control over the safety procedures and operating procedures at the subject InterkordSA, Inc. plant in Whiteville, North Carolina, since December 9, 2000, the Defendant DUSA (and as a matter of law by imputation Defendant KordSA), in order to induce the purchase of tire cord machines which it designed, marketed, and sold, advertised and represented to members of the public that the subject machines were safe for the purposes for which the subject machines were designed and intended.

*Id.*

McCormick and Zenith filed responses to DUSA's Motion for Summary Judgment on December 21, 2006. McCormick submitted a number of affidavits, upon which both he and Zenith rely in support of their respective responses. Based upon these affidavits, Zenith argues that "there are disputed material facts regarding the extent of DUSA's negligence as well as the timing of its involvement in the sale, marketing, and provision to [Interkordsa] of the" subject tire cord machine. Mem. in Resp. to Mot. for Summ. J. [DE-74] at p. 4.

**D. Motions to Strike and Withdrawal**

On January 19, 2007, DUSA filed a Motion to Strike From the Amended Complaint All References to KordSA, Incorporated [DE-85]. On February 16, 2007, DUSA also filed a Motion

to Strike Inadmissible and Immaterial Testimony from Affidavits proffered by McCormick and Zenith [DE-96]. That same day, DUSA filed a Motion for *In Camera* Inspection of Confidential Attorney Work Product in Connection with Motion to Strike Opposing Affidavits [DE-98].

Zenith, on March 5, 2007, filed a Motion to Withdraw [DE-101], stating that McCormick had settled his claim against GmbH and reached an agreement with Zenith with regard to the subrogation lien. On April 10, 2007, McCormick and GmbH filed a Stipulation of Dismissal [DE-107] as to McCormick's claims against GmbH. DUSA then filed a Motion for Judgment on the Pleadings, or in the Alternative, Second Motion for Summary Judgment [DE-108]. The various motions are ripe for ruling now.

## II. MOTION TO WITHDRAW

Zenith moves to withdraw from this action, representing that because it has reached an agreement with McCormick as to its subrogation lien, it no longer has an interest in this action. For the reasons started in Zenith's unopposed Motion to Withdraw [DE-101], the Motion is ALLOWED and Zenith is DISMISSED from this action.

## III. MOTION FOR JUDGMENT ON THE PLEADINGS AND SUMMARY JUDGMENT

### A. Statute of Limitations Argument

In its Motion for Judgment on the Pleadings, or in the Alternative, Second Motion for Summary Judgment [DE-108], DUSA contends that McCormick's "new theory" of "responsibility for safety" liability in his Amended Complaint is barred by the statute of limitations. Specifically, DUSA contends that in the original Complaint, McCormick's negligence claim was based upon allegations that DUSA designed, manufactured, marketed,

distributed, and sold the tire cord machine involved in McCormick's injury. DUSA contends that it was only after it moved for summary judgment on McCormick's claims with evidence purporting to show that DUSA did none of those alleged activities did McCormick seek leave to file an Amended Complaint. DUSA submits that the Amended Complaint contains new allegations seeking to impose liability on DUSA for reasons that go beyond being a designer, manufacturer, marketer or seller of the tire cord machine. According to DUSA, the new allegations seek to impose liability on a new theory of negligence, and are based on conduct that could have arisen only after the tire cord machine was assembled. Consequently, DUSA argues, this new theory of negligence is barred by North Carolina's three-year statute of limitations. In response, McCormick contends that the new theory relates back to the original Complaint under Rule 15(c) of the Federal Rules of Civil Procedure, and is therefore timely.

Rule 15(c)(1)(B), provides in pertinent part the following: "An amendment to the pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out–or attempted to be set out–in the original pleading." FED. R. CIV. P. 15(C). The Fourth Circuit has explained that courts should focus on two issues in determining whether an amended claim relates back to an earlier complaint under Rule 15(c): "First, to relate back there must be a factual nexus between the amendment and the original complaint. . . . Second, if there is some factual nexus an amended claim is liberally construed to relate back to the original complaint if the defendant had notice of the claim and will not be prejudiced by the amendment." *Grattan v. Burnett*, 710 F.2d 160, 163 (4th Cir.1983) (internal citations omitted).

At the outset, the parties disagree as to whether there is a factual nexus between the Original and Amended Complaints. For its part, DUSA posits:

> With regard to the original Complaint, the "conduct, transaction, occurrence" referred to in Federal Rule 15(c) had to have taken place, if at all, at a time when the subject tire cord machine was designed manufactured, marketed and sold. . . . [T]he undisputed evidence is that any design, manufacture, marketing and sale of the machine would have had to *precede* DUSA's involvement in becoming the parent corporation of Interkodsa, Inc. . . . [A]ny conduct . . . in allegedly assuming safety responsibility for the machine would have had to occur at a different time and in a wholly different circumstance compared to the originally alleged conduct, transaction, or occurrence of designing, manufacturing, marketing, and selling the tire cord machine.

Mem. in Support of J. on the Pleadings [DE-109] at p. 27. McCormick, however, argues that Rule 15(c) is satisfied because "both the amended complaint and the original complaint concern 'the events leading up to' the injury to Mr. McCormick." Pl.'s Resp. [DE-114] at p. 19 (quoting *Grattan*, 710 F.2d at 163). In McCormick's view,

> In both cases the severe injury and the lifelong disability of Mr McCormack[sic] constitute "the ultimate wrong" that is at issue in this litigation. Plaintiff alleges that Defendant DUSA's negligence caused the severe crippling and disabling injuries to Mr. McCormick, which is, ultimately, the singular issue of both the original and amended complaints as they relate to DUSA.

*Id.* In other words, McCormick contends that what is important in the factual nexus analysis is that in both Complaints he alleges that DUSA's negligence, from whatever actions, caused his severe injuries. DUSA, on the contrary, contends that what is important is the theory and underlying factual basis for the negligence claim differs between the Amended and Original Complaints.

It goes without saying that McCormick's new theory of negligence is factually related to his original theory, in as much as both allege the same injury to McCormick. As other courts have noted, however, "claims must be more than factually related to 'arise out of' the same

conduct." *Louisiana Wholesale Drug Co., Inc. v. Biovail Corp.*, 437 F. Supp. 2d 79, 87 (D.D.C. 2006). The requisite factual nexus, and therefore, "relation back[,] depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims." *Mayle v. Felix*, 545 U.S. 644, 659 (2005) (citing *Clipper Express v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240, 1259 n.29 (9th Cir. 1982); 6A C. WRIGHT, A. MILLER & M. KANE, FEDERAL PRACTICE AND PROCEDURE § 1497, p. 85 (2d ed. 1990)). In this instance, the only fact uniting the original and newly asserted negligence claims is the ultimate severe injury to McCormick.

As DUSA notes, the negligence claim in the original Complaint was premised upon DUSA's alleged role as a designer, manufacturer, marketer and seller of the tire cord machine. In contrast, the Amended Complaint's negligence claim is premised upon DUSA's alleged legal duty of responsibility for safety of the machine, and the workers using the machine. Despite McCormick's insistence to the contrary, the negligence claim in the Amended Complaint does not concern "exactly the same facts alleged in the original Complaint." Response [DE-114] at p. 21. Indeed, the Amended Complaint rests upon facts which are entirely new and different from the facts alleged in the original Complaint. *Compare* Notice of Removal [DE-1], Original Compl. ¶¶ 9-11 (alleging that "Defendants Sabanci" designed, constructed, manufactured, sold, marketed, and provided various tire cord manufacturing machines to Interkordsa, Inc., in 2001) *with* Amended Compl. [DE-77] ¶¶ 15-26 (alleging that DUSA selected the tire cord machine, oversaw its installation, provided safety procedures for the tire cord machine, and provided safety engineers who conducted safety audits on the machine); *cf. Louisiana Wholesale Drug Co., Inc.*, 437 F. Supp. 2d at 87 (determining that plaintiff's new theory of antitrust injury did not relate

back to original claim for antitrust injury because it relied upon allegations of fact that are entirely new).

The court finds *Grattan*, the only case of binding precedent upon which McCormick relies, to be distinguishable. In *Grattan*, the Fourth Circuit found that a factual nexus existed between the plaintiffs' original claim for arbitrary dismissal from public employment and later claims for sex and race discrimination, concluding that "[b]oth concern the events leading up to their termination . . . , and in both the termination was the ultimate wrong of which they complained." *Grattan* 710 F.2d at 163. As this court already has noted, the simple fact that McCormick claims the same injury in both claims is not enough to establish a factual nexus. Moreover, McCormick's argument that, as in *Grattan*, the two negligence claims "concern the events leading up to" his injury, applies the reasoning of *Grattan* with too broad a stroke. There is no indication that the new discrimination claims in *Grattan* concerned different time periods and facts like the instant case.

Consequently, the court finds the Amended Complaint's "responsibility-for-safety" negligence claim does not relate back to the negligence claim in the Original Complaint and is barred by North Carolina's three-year the statute of limitations. *See* N.C. Gen. Stat. § 1-52(5). McCormick's date of injury was July 3, 2003. The negligence claim in the Amended Complaint dates to December 29, 2006, the date McCormick filed his Amended Complaint after the court granted leave to amend the complaint [DE-76]. Accordingly, under the standard for a Rule 12(c) motion, DUSA's Motion for Judgment on the Pleadings must be granted because McCormick is not entitled to offer evidence on his time-barred negligence claim against DUSA and KordSA. Thus, DUSA's Motion for Judgment on the Pleadings, or in the Alternative, Motion for

Summary Judgment, is ALLOWED, and McCormick's negligence claims against DUSA and KordSA in his Amended Complaint [DE-77] are hereby DISMISSED.

## B. Breach of Warranties Claim

In the Amended Complaint, McCormick's express and implied warranties claim is nearly indentical from the Original Complaint. The only substantial difference the court notes is that DUSA (and KordSA) is named as the breaching party, rather than the previous designation of "Defendants Sabanci." Thus, the argument set forth in the briefs relating to the DUSA's first Motion for Summary Judgment [DE-49] are applicable to the Amended Complaint.

DUSA contends that that it is an essential element of any breach of warranty claim under the North Carolina Uniform Commercial Code that there be a sale of goods by the party allegedly giving the warranty. The court agrees. The North Carolina Uniform Commercial Code Section 25- 2-313(1) provides: "Express warranties by the *seller* are created as follows[.]" N.C. Gen. Stat. § 25-2-313 (list of conditions creating warranties omitted) (emphasis added). Similarly, an implied warranty of merchantability arises "in a contract for [the goods'] sale if the *seller* is a merchant with respect to the goods of that kind." N.C. Gen. Stat. § 25-2-314(1) (emphasis added). And an implied warranty of fitness for a particular purpose arises "[w]here the *seller* at the time of contracting has reason to know any particular purpose for which the goods are required . . . ." N.C. Gen. Stat. § 25-2-315 (emphasis added). The case is also governed by the North Carolina Products Liability Act, Chapter 99B of the North Carolina General Statutes, which applies to actions for injury to a "person resulting from a sale of a product." *DeWitt v. Eveready Battery Co., Inc.*, 355 N.C. 672, 683, 565 S.E.2d 140, 147 (2002). Under the this Act, which is meant to be "harmonious" with the Uniform Commercial Code, *Morrison v. Sears,*

*Roebuck & Co.*, 319 N.C. 298, 304, 354 S.E.2d 495, 499 (1987), a *manufacturer* may also be liable on a warranty theory. N.C.G.S. § 99-B-1.2.

Here, the undisputed evidence establishes that DUSA did not sell (or otherwise design, manufacture, assemble, or install) the subject tire cording machine. The Share Purchase Agreement between GmbH, the seller of all shares of Interkordsa, and DUSA was executed on July 25, 2001. The Whitehall facility building was constructed before then, by February 2001. Aff. of Jim Bailey at ¶ 3 [DE-49-2]. The tire cord machine, along with the other industrial equipment, was installed by Nuermont Corporation pursuant to a bid proposal accepted by Interkordsa on or about November 2000. Id. at ¶¶ 5, 6, 7 and Exh. C (Nuermont bid proposal); Aff. of Sam Hixson at ¶ 5 [DE-49-3]. **Dr. Walter Terschuren, President of GmbH and** Interkordsa, designed the subject tire cord machine, and provided (via electronic files) many blueprints of the design to Nuermont for Nuermont's use in assembling and installing the machine on site. Aff. of Jim Bailey at ¶¶ 4, 5, 6 and Exh. C. GmbH purchased the component parts for the tire cord machine, and Interkordsa reimbursed those costs. *Id.* at ¶ 6. The installation agreement with Nuermont required that "[a]ll equipment and armatures will be supplied by Interkordsa at the site in containers, uncrated, ready for assembly . . . and installation . . . ." *Id.* at Exh. C, p.4. Nuermont's installation of the industrial machinery took place approximately between the end of November and early February. *Id.* at Exh. C, p.2. The subject tire cord machine was on-line and in production by approximately April 2001. Aff. of David Stewart at ¶ 15. Nothing in the evidence presented by Plaintiff disputes that the subject machine was purchased, assembled, and in operation *before* DUSA acquired GmbH's full shares of Interkordsa on July 25, 2001.

Plaintiff's and Zenith's opposition to summary judgment make almost no mention of Plaintiff's breach of warranty claims, perhaps indicating the tenuous nature of such claims. Plaintiff and Zenith on summary judgment argue that there are disputed material facts relating to the "timing of [DUSA's] involvement in the sale, marketing, and provision to [Interkordsa] of the" subject tire cord machine. However, a careful review of the evidence in the record, namely the affidavits relied upon by Plaintiff and Zenith, reveal that the only possible disputed facts refer to when DUSA management began taking control of the plant such that they affirmatively took on the responsibility for safety in the plant. These issues are, perhaps, in dispute, but they are moot, because Plaintiff's responsibility-for-safety negligence claim fails as time-barred. The evidence in the record fails to create a genuine issue of fact that DUSA was the seller or manufacturer of the subject tire cord machine. Accordingly, DUSA cannot be held liable on a breach of warranty theory. *See McCorkle v. Aeroglide Corp.*, 115 N.C. App. 651, 658, 446 S.E.2d 145, 150, *rev. denied*, 338 N.C. 518, 452 S.E.2d 812 (1994) (finding persons who maintained production equipment could not be liable to worker injured by equipment on a warranty theory because they were not sellers of the equipment).

## IV. CONCLUSION

For the foregoing reasons, DUSA's Motion for Judgment on the Pleadings or, in the Alternative, Second Motion for Summary Judgment [DE-108], which relates to Plaintiff's negligence claims in the Amended Complaint, is ALLOWED as a motion for judgment on the pleadings. DUSA's first Motion for Summary Judgment [DE-49] is DENIED IN PART AS MOOT as it relates to the negligence claims of the Original Complaint, and ALLOWED IN PART as it relates to Plaintiff's warranty claims against DUSA and KordSA. Accordingly, all of

Plaintiff's claims against DUSA and its successor KordSA are DISMISSED. DUSA's Motion to Strike [DE-85], Motion to Strike [DE-96], and Motion for In Camera Inspection [DE-98] are DENIED AS MOOT. Zenith's Motion to Withdraw [DE-101] is ALLOWED, and Zenith is DISMISSED from this action. All other defendants having been previously dismissed from this action, the Clerk is directed to close this case.

SO ORDERED.

This the 9th day of August, 2009.

*James C. Fox*
JAMES C. FOX
Senior United States District Judge